# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| The Woodmont Company and Woodmont Hay Creek, L.P., | ) ) ) **ORDER DENYING MOTION TO COMPEL DISCOVERY** |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| LaSalle Shopping Center, LLC and Hay Creek Development, LLC, | ) ) ) Case No.: 1:17-cv-73 ) |
| Defendants. | ) |

Before the Court is a Motion to Compel Discovery filed by Defendants LaSalle Shopping Center, LLC and Hay Creek Development, LLC. (Doc. No. 109). For the reasons explained below, this motion is **DENIED**.

## I. Background

This dispute centers on several discovery requests served by Defendants LaSalle Shopping Center, LLC and Hay Creek Development, LLC on Plaintiffs The Woodmont Company and Woodmont Hay Creek, L.P. (collectively, "Woodmont"). The crux of the dispute is Woodmont's production of electronically stored information.

The below facts are drawn from the various filings in support of this motion and are either undisputed or assumed to be true for purposes of the dispute.

### A. The Instant Dispute.

At issue are three sets of Requests for Production served between January 2018 and May 2019. (Doc. Nos. 111-2, 111-6, 111-9). Woodmont responded to the first Request for Production

1

on March 13, 2018, and the second on January 2, 2019. (Doc. Nos. 111-5, 112-1). Defendants took issue with both responses.

Among other complaints, Defendants objected to Woodmont's use of broad Bates numbered ranges in response to specific discovery requests. For instance, Defendants' Request No. 2 in its second Request for Production asks Woodmont to provide "copies of any and all communications, including emails, letters, or other documents provided to, received from or exchanged by any employee or representative of Woodmont with KLJ on the project." (Doc. No. 112-1, p. 1). Woodmont responds by objecting that the request is duplicative and redundant and states, "Without waiving this objection, all emails and communications regarding the project were previously produced as bate-stamped 21129-41201 and 41202-49668." Id. In a letter dated January 28, 2019, counsel for Defendants criticize this response, stating that Woodmont is improperly shifting the burden of determining applicable documents to Defendants. (Doc. No. 111-7, p. 2). Counsel for Defendants also protest that Woodmont's produced emails are difficult to navigate and not searchable. Id. Defendants eventually involved the Court, which held a status conference on April 24, 2019. (Doc. No. 67).

Defendants served their third Request for Production on May 7, 2019. (Doc. No. 111-9). It included, apparently for the first time, a list of search terms for Woodmont to use when locating ESI. Id. at 8-9. The list included tenant names, subcontractor names, and also a category titled "Other Search Terms," which included the words "Lease," "Rent Schedule," etc. Id. Woodmont responded with a number of objections on June 10, 2019. (Doc. No. 111-10). Its response included an Excel spreadsheet listing the search terms that it had previously used to develop its responses to the first two requests for production. Id. at 7. This list is organized differently than Defendant's list and appears to include fewer terms. See id.

Several days later, on June 12, 2019, Woodmont's paralegal, Erik King, met with Defendants' paralegal, Lori Steckler, as encouraged by the Court at the April status conference. See Doc. No. 118, ¶¶ 6-7. King and Steckler discussed searching and organizing the discovery responses, which consisted of approximately 30,000 emails and 55,000 total pages. Id. King had apparently spent some time prior to the meeting reorganizing the documents. Id. at ¶ 5. After the meeting, Defendants' counsel requested a thumb drive of the documents as King had organized them, which Woodmont's counsel provided on or about July 1. (Doc. Nos. 111-11, p. 1; Doc. No. 117-5, pp. 1-2). On September 10, 2019, the Court again held a status conference regarding the discovery dispute. (Doc. No. 93).

On January 6, 2020, Defendants filed their Motion to Compel. (Doc. No. 109). Woodmont responded in opposition on January 27, 2020. (Doc. No. 120). Defendants filed a reply on February 3, 2020. (Doc. No. 123).

### B. Underlying Litigation

On August 12, 2019, approximately five months prior to the filing of the motions, Woodmont filed a Motion for Summary Judgment. (Doc. No. 77). That same day, Defendants filed a Motion for Partial Summary Judgment. (Doc. No. 80).

On June 2, 2020, Chief Judge Welte entered an Order which granted in part and denied in part both motions for summary judgment. (Doc. No. 127). This order disposed of a large portion of Woodmont's claims and Defendants' counterclaims. See id.

## II. Governing Law

Requests for production of documents or electronically stored information are governed by Rule 34 of the Federal Rule of Civil Procedure. A party may *request* production of "any designated documents or electronically stored information – including writings, drawings,

3

graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. . ." Rule 34(a)(1)(A). A request "may specify the form or forms in which electronically stored information is to be produced." Rule 34(b)(1)(C). Rule 34(b)(2)(E) provides additional procedures for production of documents *or* electronically stored information ("ESI"):

> (E) *Producing the Documents or Electronically Stored Information*. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents *or* electronically stored information:
> 
> (i) A party must produce documents as they are kept in the usual course of business *or* must organize and label them to correspond to the categories in the request;
> 
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained *or* in a reasonably usable form or forms; and
> 
> (iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E) (emphasis added).

There is some disagreement as to whether the optional subpart (i) requirement that a party "organize and label [documents] to correspond to the categories in the request" applies to ESI. According to some commentators, "the better view" is that subpart (i) applies to documents *other than* ESI, and subparts (ii) and (iii) apply to *only* ESI. See The Sedona Principles, Third Edition:

Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 SEDONA CONF. J. 1, 182-3 (2018).

However, the majority of district courts have ruled the opposite, holding that subpart (i) does apply to ESI. See, e.g., Landry v. Swire Oilfield Servs., L.L.C., 323 F.R.D. 360, 388 (D.N.M. 2018) (stating that the "vast majority of courts" have treated the subparts as supplementary rather than alternative); see also Ronaldson v. National Ass'n of Home Builders, 2020 WL 3259226, at *8 (D.D.C. June 3, 2020) (same). This court believes the language of Rule 34 is clear. Simply put, Rule 34 sets forth procedural and substantive requirements; and, it offers some presumptively reasonable options to litigants, with the hope they may find common ground in both their requests and their production of information, whether electronically stored and produced, or not. It should be noted that most information *is* stored electronically, even if it originated otherwise, whether in the form of documents, graphs, images, or data. The old file drawers, bulging as they were with "hard copies," have often been scanned, digitized, organized and stored electronically, even in advance of litigation. The procedures in Rule 34 apply to the production of documents *or* electronically stored information, unless the parties stipulate otherwise; or, unless the court orders something different.

Lastly, as with all the Federal Rules of Civil Procedure, the rules governing discovery, "should be construed. . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. As such, "judges should not hesitate to exercise appropriate control over the discovery process." Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket No. 2, 197 F.3d 922, 927 (8th Cir. 1999).

## III. Analysis

Defendants raise three primary issues in their Motion to Compel. First, they assert the existence of further, as-yet-undisclosed emails based on deposition testimony of two Woodmont witnesses; second, they object to Woodmont's failure to provide notarized executed discovery answers; and, lastly, they object generally to Woodmont's responses to their Requests for Production. In addition to seeking specific relief in terms of orders to compel discovery, Defendants also seek attorneys' fees and costs for the work associated with this motion. The three issues are discussed sequentially below.

### A. Emails Referenced by Stephen Coslik and Grant Gary

The Court will first address what Defendants characterize as references to missing emails and/or documents made at the depositions of Stephen Coslik and Grant Gary. Woodmont contends that the testimony shows no such missing emails.

#### 1. Grant Gary Deposition

On November 1, 2018, Defendants deposed Woodmont employee Grant Gary. See Doc. No. 117-9. According to Defendants, he testified that Woodmont has failed to produced records "requested by Defendants" and "critical to the issues in this case." (Doc. No. 110, p. 11). Defendants do not elaborate further in the text of their brief, nor do they attach the deposition transcript, but the Court is able to discern the relevant portions of Gary's testimony from an attached August 6, 2019 letter and the transcripts that Woodmont attached with their response. (Doc. No. 111-12, p. 5; Doc. No. 117-9).

Turning to what appear to be the relevant pages of the deposition, Mr. Gary does at one point express surprise that only one email from himself to someone named Boh Kurylo was found:

6

> [Defendants' counsel]: Okay. And we've gone through the Woodmont emails to the best of our ability and other documents in relation to OshKosh/Carter's. And from the start of the project to the end of the project we find a total of one email from the entire time to Boh Kurlyo. Can you explain that to us?
>
> \*\*\*
>
> [Gary]: Yeah. I mean, I don't agree with that.

(Doc. No. 117-9, p. 47).

But as Defendants' counsel says in the next line of the deposition:

> [Defendant's counsel]: Okay. Well, do you think either we missed some emails by you or Woodmont missed providing some of your emails to us?
>
> [Gary]: I don't know. I'd have to go back and look at this.

Id.

The Court finds it more likely that the former is true. In their letter, Defendants go on to explain that they found two emails in a search subsequent to Gary's deposition, and they do not explain whether one of these was the one they had at the time of the deposition. (Doc. No. 111-12, p. 5). Further, Woodmont explains in their response that its paralegal found four emails from Gary including the name "Kurylo," and dozens more mentioning Carter's and/or Oshkosh. See Doc. No. 121, ¶¶ 5-6; Doc. No. 121-1. In an affidavit submitted with Defendants' reply, their paralegal states that the majority of these emails are from architects or between the parties, but references three Bates-stamped pages regarding Mr. Kurlyo that she had already found. (Doc. No. 125, ¶ 13). At the very least, more than one email seems to be in Defendants' possession and Gary's testimony is not specific enough to imply the presence of more.

Defendants also cite the following testimony by Gary, but it is too vague to support their contentions.

7

> [Defendants' counsel]: Ok. So tell me what follow-up you had with anyone from Carter's/OshKosh following this letter of intent about leasing at the Hay Creek Shops.
>
> [Gary]: I don't recall specifically. I already provided, again, general communication and updates on the overall project.
>
> [Defendants' counsel]: Was that by e-mail? Was that by telephone calls?
>
> [Gary]: Both.
>
> [Defendants' counsel]: Okay. So to the extent you followed up with Carter's/OshKosh there should be emails from Woodmont reflecting that follow-up by you?
>
> \*\*\*
>
> [Gary]: I don't recall specifically, but there would have been and there was communication. There was also communication at the trade conference that I referenced previously.

(Doc. No. 117, p. 33).

Defendants cite the above text and write, "in other words, Gary testified, in no uncertain terms, that there is additional information that [Woodmont has] failed to produce." (Doc. No. 123, p. 8). But the Court does not read this testimony this way. Gary references emails, but also "communication" more generally. When asked pointedly whether "there should be emails," he states, "I don't recall specifically," only affirming that there was "communication," which presumably includes the telephone calls and "communication at trade conferences" referenced above.  Furthermore, there is no reason the emails he references could not be the emails already discovered by Defendants.

In short, the Court does not find grounds, based on Gary's deposition testimony, to conclude that emails were withheld, deliberately or inadvertently. No further deposition of Mr. Gary is warranted.

8

### 2. Stephen Coslik Testimony

Defendants also point to the deposition of Stephen Coslik as justification for their request, saying he testified that Woodmont failed to produce records. See Doc. No. 110, p. 11. They do not provide specifics in their memorandum, and so the Court turns again to their August 6, 2019 letter. There, Defendants do not cite to particular testimony by Coslik on this matter, but rather statements made at the deposition by Mr. King, Woodmont's counsel, describing the email retrieval process. (Doc. No. 111-12, p. 4-5).

According to Woodmont, Defendants' claim that Coslik testified that additional emails exist is inaccurate and misleading. Woodmont cites Coslik's deposition testimony, which it asserts shows the opposite.

Turning to the actual testimony on the pages cited by the parties, the Court agrees with Woodmont. When asked explicitly by Defendants' counsel "are [you] aware of any other emails with Boh Kurlyo and Grant Gary in relation to Carter's?" Coslik replies "No." (Doc. No. 117-8, p. 7-8). It is difficult to get much clearer than this.

Defendants also object to an earlier line of questioning cited by Woodmont as proof that everything was produced. When Coslik was asked, "[D]o you believe that all of the e-mails that were sent or received by these individuals, including Grant Gary, would have been produced as part of any documents produced in this case in the litigation?" he replies:

> I'll say that the instructions I gave was to produce everything. Knowing that there's a human element associated with this, it is quite possible that some maybe weren't produced that should have been produced. But the instructions that I gave a professional organization that has day-to-day responsibilities for our IT was to produce everything.

(Doc. No. 117-8, p. 7).

9

Defendants state that this testimony "begs the issue," because "[s]imply because Coslik gave instructions to someone does not mean that person complied with the instructions." (Doc. No. 123, p. 8). The Court would also point out that simply because Coslik gave instructions to someone does not mean that the person *didn't* comply with the instructions. Coslik's acknowledgment of human fallibility can hardly be used to justify the position that emails are missing when he explicitly testifies that he is aware of no missing emails. As with Gary, Defendants have shown no grounds for further discovery on the email question or to re-depose Coslik.

### B. Delay in Providing Executed Discovery Answers

In their Motion, Defendants explain to the Court that they have not yet received notarized executed discovery answers as required by Rule 26(g)(1)(B)(ii). They point out that they requested executed discovery answers several times over the course of the discovery process. See, e.g., Doc. No. 111-8, p. 3. Defendants argue that without appropriately executed answers, "they would be unable to use those answers as evidence in the case, and would be unable to effectively cross examine or impeach some or all of Woodmont's witnesses at trial." (Doc. No. 110, p. 8). They contend that the Court must impose sanctions pursuant to 26(g)(3).

Woodmont simply responds that prior to the filing of its memorandum, it provided the requisite executed documents.

Here, the Court does not find that sanctions or attorneys fees or costs are warranted. While Woodmont should have been more diligent in providing the required executed answered, its tardiness in this respect does not appear to have caused Defendants any actual harm.

C.     **Woodmont's Answers to Defendants' Requests for Production.**

Lastly, Defendants contend that Woodmont's document productions violated Rule 34. They describe the situation before the Court as "nearly identical" to that presented in the case of Remote Technologies, Inc. v. Data International Co., Ltd., 2012 WL 13028154 (D. Minn. July 31, 2012). In that case, the Court granted a plaintiff's motion to compel discovery after finding Defendants' production deficient. Remote Technologies, 2012 WL 13028154 at 12. Here, Defendants accuse Woodmont of likewise committing "a host of discovery abuses."

Defendants criticize Woodmont's production in several ways, many of which overlap. For clarity's sake, the Court will address these alleged violations of Rule 34 by topic.

1.     **Searchability**

Defendants protest that Woodmont's production is not searchable. They criticize Woodmont's use of PDF format, which they characterize as "extremely time consuming to search, or not searchable at all," requiring each PDF to be opened individually to be reviewed. Doc. No. 110 at 10.

Woodmont responds that the emails are very searchable, relying particularly on the affidavit by its paralegal, Sharon Cavender. As explained in her affidavit, Cavender performed an example search of sorts to demonstrate how the PDFs can be combined and searched; she combined PDFs from a particular employee and searched them for references to a particular tenant. (Doc. No. 121, ¶ 5-6). Pointing to the ease of this process, Woodmont explains that by combining PDFs, no individual PDFs need to be searched independently.

In their Reply, Defendants maintain that the discovery responses are still not searchable, supplying a new affidavit from their paralegal Steckler. In her most recent affidavit, Steckler asserts that the latest organization of the documents provided by Cavender are "no more

11

searchable than before," because the PDFs need to either be searched individually or combined and then searched. (Doc. No. 125, ¶ 8). Steckler states that combining the PDFs is itself unsustainable, writing, "[d]uring this process, I dealt with computer and programs lock ups and once I got to the point where I had all of the 4,200 PDF pages combined, I was not able to save the combined single PDF. The error my computer gave me was the 'document could not be saved. This file is two [sic] big for the current operation.'" Id. at ¶ 8. Steckler was apparently able to replicate Cavender's example search after an hour. Id. at ¶ 12.

The Court finds that these emails are sufficiently searchable to conform with the requirement of Rule 34(b)(2)(E)(ii). Paragraph (ii) dictates that if a request does not specify a form for ESI, a party must provide it in the form that it is "ordinarily maintained" or in a "reasonably usable form or forms." Here, Defendants requested that Plaintiff's production should include Bates-numbered documents provided on a CD or thumb drive, without excluding production in PDF form. See Doc. No. 111-2, p. 5, ¶ K; Doc. No. 111-6, p. 5, ¶ K. As such, the Court finds that the form of Plaintiff's production was made in substantial compliance with Plaintiff's request for production in a specified form and exceeded the minimum requirements of Rule 34.  While the Court is not aware how the emails were ordinarily maintained, the emails were produced in PDF form, which is "reasonably useable." Defendants may easily review the emails and may combine the PDFs and then search them electronically. The Court is aware that Defendants' paralegal received computer errors regarding file size when combining PDFs. While sympathetic to these challenges, the Court finds it broadly reasonable, in light of current trends in civil litigation, to expect that litigants themselves or through contracted IT experts can use available computer technology to combine and/or search thousands of pages of electronically stored information without substantial delay and without unreasonable cost. Steckler's affidavit

acknowledges the same, noting the paralegal was able to perform the search. (Doc. No. 125, ¶ 12).

### 2. Irrelevant Information

Defendants argue that "large swaths" of the produced discovery are nonresponsive to their requests. (Doc. No. 110, p. 11). In its response, Woodmont explains that it used a third-party vendor to obtain all relevant emails by performing keyword searches on their email system, including the project tenants and vendors. It also states that it reviewed and/or opened the produced emails. Defendants reply with several examples of the produced emails that are clearly irrelevant to the present case.

Here, the Court finds that the majority of Woodmont's production appears relevant to Defendants' requests. And the searchability of the production, discussed above, allows Defendants to ignore irrelevant emails. The Court fails to find that the presence of the few irrelevant emails cited by Defendants constitutes a violation of any discovery rules.

### 3. Organization of Production Generally

Defendants object to the organization of Woodmont's production. They accuse Woodmont of failing to organize its responses in any discernible fashion. They further criticize Woodmont's reference to broad Bates number ranges, rather than specific documents, in answering document requests.

Woodmont responds that it has fulfilled its discovery obligations. It points out that even though it maintains it is not its burden to organize the responsive ESI in a fashion customized for Defendants' wishes, it has worked continually to make the process more efficient, including: rearranging the emails into folders that broke them down by sender, meeting with Defendants' counsel's paralegal to help her with keyword searching, and providing another thumb drive with

the reorganized documents. Woodmont also describes its most recent efforts by paralegal Sharon Cavender. As described her affidavit, Cavender reorganized the responses yet again to remove subfolders and to rename the files more descriptively, giving this final flash drive to Defendants. (Doc. No. 121, ¶ 4). She also performs the example search described above. As to Bates numbers, Woodmont responds that Defendants are improperly trying to force it to perform their work by organizing the discovery in a fashion that meets their needs, which it asserts is not required under the rule.

Defendants reply that all Woodmont's efforts merely go to show that its original document production was disorganized and difficult to navigate and has been for over two years. Defendants further maintain that the discovery responses are still inadequate, citing the Steckler affidavit cited above. They contend that Rule 34(b) requires Defendants to provide specific Bates numbers for all requests. They again compare Defendants' production to the deficient production of the defendants in Remote Technologies, 2012 WL 13028154.

The court notes the facts are highly distinguishable from those in Remote Technologies, 2012 WL 13028154. In that case, the party ultimately sanctioned for discovery abuses performed the following actions: provided documents that were not Bates-numbered, id. at 5; conceded that nearly 75% of provided attachments were irrelevant, id. at 6; conceded that they were unable to determine whether the documents were relevant or not and so produced everything, id.; apparently only used two search terms, id. at 8; and, generally, "produced a mass of electronic files that were either unnumbered, out of sequence, could not be opened, or were irrelevant to the discovery sought." Id. at 11.

Here, in contrast, Woodmont has Bates-numbered all its responses. As discussed above, majority of the production appears to be relevant to Plaintiff's requests. While Defendants claim

several emails are clearly nonresponsive, there is no indication that anywhere near 75% of the production was irrelevant. Woodmont did not "produce everything," but performed a targeted search using an IT company using search terms, such as tenant names, that were logically related to Defendants' requests for production. There is no indication that any of the documents could not be opened. Lastly, Woodmont's counsel and its staff repeatedly made efforts to organize the documents and emails for Defendants' benefit.

The Court finds that Woodmont has complied with its obligation under Rule 34 and all other applicable rules. As discussed above, the information is reasonably usable in compliance with Rule 34(b)(2)(E)(ii). The production also complies with Rule 34(b)(2)(E)(i). While Defendants maintain the emails were *not* produced as they were kept in the ordinary course of business, it is not clear to the Court that this is true. From the descriptions of the production in Defendants' affidavit, some emails were produced in folders labeled "conflicts, deleted items, deletions, inbox, purges, sent items," and other emails were produced by sender, with emails arranged alphabetically. See Doc. No. 112, ¶¶ 6-7, Doc. No. 125, ¶ 11. From what the Court can discern, this production is analogous to how emails are usually organized in the course of business; i.e., by folder and sender.

But even assuming that these emails were not arranged in the ordinary course of business in this way, the Court finds that the labeling and organization provided by Woodmont is sufficient. Defendant protests that Woodmont failed to provide specific Bates ranges; it appears that Defendants did not specifically request that "All discovery answers . . . should specifically refer to the applicable bates number" until its second set of requests for production. Doc. No. 111-6, p. 5, ¶ K. But looking at Woodmont's responses to the first set of requests, it did appear to provide specific, non-overlapping Bates number ranges for at least some of the requests for

materials dealing with specific tenants. For example, emails regarding Kirklands (Request 41) were apparently provided at Bates numbers Woodmont0012801-13827; emails in response to the next tenant, Mattress Firm (Request 43), were provided at Bates numbers Woodmont0013828-14430, followed by Ross, Select Comfort, etc. See Doc. No. 111-5, p. 10-11.

While Woodmont only provided broad Bates ranges in response to Request 2 in Defendant's second set of requests for production, the request itself sought "copies of any and all communications, including emails . . . received from or exchanged by any employee or representative of Woodmont with KLJ on the project." Doc. No. 111-6, p. 5. Woodmont had already provided all responsive emails and organized them by sender, i.e., by "employee or representative of Woodmont." They are not required to re-organize the production to highlight emails with KLJ by Bates number or otherwise. Their level of labeling and organization is more than sufficient for purposes of Rule 34. As explained above, Defendants can combine the PDFs and search them for any specific information they wish. The Court finds that Woodmont's production was sufficient under Rule 34(b)(2)(E).

The Court's decision is further informed by the procedural posture of the case. Judge Welte's June 2, 2020, Order addressed a majority of claims in the case, and of those addressed, specifically disposed of all but one of Plaintiff's claims and all of Defendant's counterclaims except those for breaches of leases regarding two of the tenants, Carter's/Oshkosh and Dollar Tree, and for violations of N.D.C.C. Ch. 51-15. See Doc. No. 127. Demanding that Woodmont re-run search terms and re-Bates-stamp its production now would not promote a "just, speedy, and inexpensive determination" in this action. Woodmont's production is organized, searchable, and "reasonably usable." The Court declines to compel them to supplement their discovery responses. The Court also denies Defendants' requests for fees and costs.

## IV. Conclusion

For the reasons stated above, the Defendants' motion (Doc. No. 109) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 12th day of November, 2020.

*/s/  Clare R. Hochhalter*
Clare R. Hochhalter
United States Magistrate Judge
